UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BOBBY LEE HINES, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:06-CV-0320-G |
| RICK THALER, Director, Texas ) | |
| Department of Criminal Justice, ) | **ECF** |
| Correctional Institutions Division, ) | |
| ) | |
| Respondent. ) | |

## ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND DENYING A CERTIFICATE OF APPEALABILITY

United States Magistrate Judge Jeff Kaplan made findings and a recommendation in this case (docket entry 70). The petitioner Bobby Lee Hines ("Hines" or "the petitioner") filed objections (docket entry 72). I have made a *de novo* review of those portions of the proposed findings and recommendation to which objection was made. For the reasons discussed below, I adopt Judge Kaplan's findings and recommendation and overrule the petitioner's objections.

I.  BACKGROUND

This is a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The petitioner is a Texas inmate who has been convicted of capital murder and sentenced to death.  He claims that the state of Texas is barred from carrying out his death sentence by the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002).  *Aktins* held that the Eight Amendment prohibits the execution of mentally regarded criminals.  *Id.* at 321.  *Atkins* tasked the states with the responsibility of formulating their own definitions of mental retardation.  536 U.S. at 317.  The Texas Court of Criminal Appeals responded by adopting the definition of mental retardation set out by the American Association of Intellectual and Developmental Disabilities.[1]  Under Texas law, "mental retardation is a disability characterized by: (1) significantly subaverage general intellectual functioning," defined as an IQ of about 70 or below; "(2) accompanied by related limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18."  *Ex parte Briseño*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (footnotes and internal quotation marks omitted).

II.  ANALYSIS

A.  Legal Standard

My review of Hines's petition is governed by 28 U.S.C. §§ 2254(d)(2) and (e)(1). A Texas state court has considered the merits of Hines's claim and

---

[1] The American Association of Intellectual and Developmental Disabilities was formerly known as the American Association on Mental Retardation.

determined that he is not mentally retarded. *See* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 246-50, *located in* State Habeas Record at 2-481.[2] Whether Hines is mentally retarded is a question of fact. See *Eldridge v. Quarterman*, 325 F. App'x 322, 325 n.15 (5th Cir.) (citing cases), *cert. denied sub nom. Eldridge v. Thaler*, __ U.S. __, 130 S. Ct. 536 (2009); *Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006), *cert. denied*, 549 U.S. 1254 (2007); see also *Williams v. Quarterman*, 293 F. App'x 298, 308 (5th Cir. 2008) (per curiam) ("The determination of whether *Briseño's* three prongs have been met is a factual finding . . . ."). Where, as here, a petition for a writ of habeas corpus presents a "claim that was adjudicated on the merits in State court proceedings," the writ shall not be granted unless the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). Section 2254(e)(1) further provides that "a determination of a factual issue made by a State court shall be presumed to be correct" in a subsequent federal habeas proceeding and that the petitioner "shall have

---

[2] The state court adopted and incorporated the state's proposed findings of fact and conclusions of law as the findings of fact and conclusions of law of the court. *See* State Court Order of July 21, 2005, *located in* State Habeas Record at 2-483.

the burden of rebutting the presumption of correctness by clear and convincing evidence."[3]

---

[3] The precise nature of "the relationship between § 2254(d)(2) and § 2254(e)(1) has caused confusion and has not yet been definitely resolved." *Fields v. Thaler*, 588 F.3d 270, 280 (5th Cir. 2009) (citing *Teti v. Bender*, 507 F.3d 50, 57-58 (1st Cir. 2007), *cert. denied sub nom Teti v. Clarke*, 552 U.S. 1287 (2008)), *cert. filed* No. 10-5060 (Jan. 25, 2010). The clear-and-convincing-evidence standard of § 2254(e)(1) is "arguably more deferential" to the state court than is the unreasonable-determination standard of § 2254(d)(2). *Wood v. Allen*, __ U.S. __, 130 S. Ct. 841, 849 (2010). The Supreme Court has held that the clear-and-convincing evidence standard of § 2254(e)(1) pertains only to a state court's determinations of particular factual issues, not a state court's decision as a whole. See *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003). However, the federal courts of appeals have divided over whether "§ 2254(e)(1)'s presumption of correctness and clear-and-convincing standard of proof" govern every challenge to a state-court factual determination or only those challenges that are based on evidence that was not presented to the state court. See *Fields*, 588 F.3d at 280 (cataloguing the circuit split). The Supreme Court granted certiorari on this question in a case decided last term, but the Court was able to resolve the case without deciding that question. See *Wood*, 130 S. Ct. at 849. It appears that the Fifth Circuit has not yet weighed in on this question. See *Fields*, 588 F.3d at 280 (declining to reach "[t]he issue on which the circuits are split" on the ground that it was "not outcome-determinative" on the facts presented).

In this case, I conclude that I need not reach the issue that has divided the circuits. Even if I were to proceed on the twin assumptions that review under § 2254(d)(2) is less deferential to the state court's findings of fact than is review under § 2254(e)(1) *and* that "the factual determination at issue should be reviewed . . . only under § 2254(d)(2) and not under § 2254(e)(1)," see *Wood*, 130 S. Ct. at 849, I would still conclude that Hines's petition should be denied. Based on my independent review of the record of the state-court proceedings, I conclude that neither the state court's finding that Hines's general intellectual functioning was not significantly subaverage during the developmental period nor the state court's finding that Hines does not manifest any related limitations in adaptative functioning was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" within the meaning of § 2254(d)(2).

Section 2254 commands substantial deference to the findings of fact and factual determinations made by state courts. See *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005) ("With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review."), *cert. denied*, 546 U.S. 1217 (2006); see also *Hogues v. Quarterman*, 312 F. App'x 684, 686 (5th Cir.) (per curiam) (describing 28 U.S.C. §§ 2254(d)(2) and (e)(1) as "highly deferential to the state court"), *cert. denied sub nom. Hogues v. Thaler*, __ U.S. __, 130 S. Ct. 373 (2009). Section 2254(d)(2) requires the petitioner to demonstrate that "a reasonable factfinder *must* conclude" that the state court's determination of the facts was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006) (emphasis added). In other words, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 130 S. Ct. at 849; see also *Collins*, 546 U.S. at 342 (repudiating the idea that AEDPA allows a federal court to use "a set of debatable inferences" to set aside a state court's factual determination); *Miller-El v. Dretke*, 545 U.S. 231, 275 (2005) (Thomas, J., dissenting) (stressing that a petitioner who seeks to obtain habeas relief on a claim governed by § 2254(d)(2) "must show that, based on the evidence before the Texas state courts, the only reasonable conclusion" is that the facts entitle the petitioner to relief).[4]

---

[4] The AEDPA framework for review of state-court factual determinations appears to be roughly equivalent to the familiar "clear error" standard of review. The Fifth Circuit has equated "an unreasonable determination of the facts" under

(continued...)

In short, when a petitioner's claim turns on factual questions that have already been adjudicated by a state court, AEDPA leaves but a narrowly circumscribed role for the federal habeas court. See *Miller-El v. Cockrell*, 537 U.S. at 341 ("A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Cf. *Cotton v. Cockrell*, 343 F.3d 746, 750 (5th Cir. 2003) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of federal law is erroneous or incorrect. The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable.") (internal citations, quotation marks, and brackets omitted), *cert. denied sub nom. Cotton v. Dretke*, 540 U.S. 1186 (2004).

---

(...continued)
§ 2254(d)(2) with a "clearly erroneous factual conclusion." See *Hebert v. Cain*, 121 F. App'x 43, 46-57 (5th Cir. 2005). The Eleventh Circuit has gone one step further and held that the combined effect of §§ 2254(d)(2) and (e)(1) is to make a federal habeas court's "review of findings of fact by the state court . . . even more deferential than under a clearly erroneous standard of review." *Wood v. Allen*, 542 F.3d 1281, 1285 (11th Cir. 2008) (citation and internal quotation marks omitted), *quoted without approval or disapproval in and affirmed by Wood v. Allen*, __ U.S. __, 130 S. Ct. 841 (2010).

The deference that is due to a state court's factual determinations is substantial, but it is not unbounded. See *Miller-El v. Cockrell*, 537 U.S. at 340 ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review."). In the *Atkins* context, however, it is not yet clear where the outer bounds of that deference lie. The Fifth Circuit has never granted habeas relief on an *Atkins* claim on the ground that a state court's denial of the *Atkins* claim was based on an unreasonable determination of the facts in lights of the evidenced presented in the state-court proceeding.[5] See *Pierce v. Thaler*, 604 F.3d 197, 212-16 (5th Cir. 2010) (affirming the district court's decision that the state habeas court was not

---

[5] The Fifth Circuit has, on two occasions, affirmed a district court's decision to grant habeas relief on an *Atkins* claim. See *Moore v. Quarterman*, 342 F. App'x 65, 66 (5th Cir. 2009) (per curiam), *cert. denied sub nom. Thaler v. Moore*, __ U.S. __, 130 S. Ct. 1736 (2010); *Rivera v. Quarterman*, 505 F.3d 349, 363 (5th Cir. 2007), *cert. denied*, __ U.S. __, 129 S. Ct. 176 (2008). However, in neither case had the district court applied the deferential standard of review embodied in §§ 2254(d)(2) and (e)(1). See *Moore v. Dretke*, 2005 WL 1606437, at *3 (E.D. Tex. July 1, 2005) (concluding that the state court had dismissed the petitioner's *Atkins* claim on procedural grounds and therefore had not adjudicated it on the merits as required by § 2254(d)), *aff'd in relevant part*, 342 F. App'x 65 (5th Cir. 2009); *Rivera*, 505 F.3d at 356-57 (concluding that the state court's decision to deny the petitioner's *Atkins* claim was the result of an unreasonable application of clearly established federal law). Rather, in both cases the district courts made *de novo* determinations of whether the petitioners could prove by a preponderance of the evidence that they were mentally retarded, and the circuit reviewed those factual determinations under the deferential clear-error standard. See *Moore*, 342 F. App'x at 67; *Rivera*, 505 F.3d at 361.

In *Lewis v. Quarterman*, 541 F.3d 280 (5th Cir. 2008), the Fifth Circuit vacated and remanded the district court's decision rejecting an *Atkins* claim on the ground that the district court erred by refusing to consider new evidence that an IQ test relied on by the state court had been improperly administered. *Id.* at 285-86. No decision has issued on remand.

unreasonable in determining that the petitioner was not mentally retarded); *Thomas v. Quarterman*, 335 F. App'x 386, 390 (5th Cir. 2009) (per curiam) (denying a certificate of appealability ("COA") from the district court's decision that the state court's denial of habeas relief was not unreasonable where the evidence presented to the state court "supported the arguments of both parties, and the state court . . . concluded that [the petitioner] was not mentally retarded"), *cert. denied sub nom. Thomas v. Thaler*, __ U.S. __, 130 S. Ct. 1054 (2010); *Eldridge*, 325 F. App'x at 325-29 (denying a COA); *Williams*, 293 F. App'x at 301-04, 307-14 (affirming, under a clear-error standard of review, the district court's *de novo* determination that the petitioner was not mentally retarded even though he presented evidence of IQ scores of 70, 71, and 71); *Moore v. Quarterman*, 517 F.3d 781, 784 (5th Cir.) (denying a COA), *cert. denied*, __ U.S. __, 129 S. Ct. 81 (2008); *Perkins v. Quarterman*, 254 F. App'x 366, 369-70 (5th Cir. 2007) (per curiam) (denying a COA), *cert. denied*, __ U.S. __, 128 S. Ct. 2503 (2008); *Taylor v. Quarterman*, 498 F.3d 306, 307-08 (5th Cir. 2007) (denying a COA), *cert. denied*, 552 U.S. 1298 (2008); *Woods v. Quarterman*, 493 F.3d 580, 586-87 (5th Cir. 2007) (affirming the district court's decision that the state habeas court was not unreasonable in determining that the petitioner was not mentally retarded); *Clark*, 457 F.3d at 445-46 (same); *Moreno v. Dretke*, 450 F.3d 158, 165 (5th Cir. 2006) (denying a COA on an *Atkins* claim that had been dismissed by a state court as an abuse of the writ), *cert. denied*, 549 U.S. 1120 (2007).

B. Application

In this case, I conclude -- for the reasons stated in Judge Kaplan's findings and recommendation -- that Hines has not carried his burden of proving that the state court's resolution of his *Atkins* claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence Hines presented to the state court. Hines advances four objections to Judge Kaplan's findings and recommendation. I am of the opinion, for the reasons that follow, that these objections are without merit.

1. *Significantly Subaverage General Intellectual Functioning*

First, Hines argues that Judge Kaplan's determination that Hines does not exhibit significantly subaverage general intellectual functioning "hinge[s] on a single test result from [an IQ test] administered when Mr. Hines was 13 years old . . . and a distorted reading of the testimony Ms. Asay, petitioner's resource room teacher." Petitioner Hines' Objections to the Findings and Recommendation of U.S. Magistrate Judge ("Objections") at 4. However, the state court offered an extensive list of reasons supporting its determination that the results of the IQ test administered to Hines when he was 13 is the most reliable indicator of his general intellectual functioning. *See* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 59-89, *located in* State Habeas Record at 2-442-2-449. A "state habeas court's decision to give more weight to the petitioner's childhood IQ test scores" than to scores obtained

on tests conducted during the pendency of post-conviction litigation is typically a reasonable one under AEDPA.  See, *e.g.*, *Eldridge*, 325 F. App'x at 326 (citing *Woods*, 493 F.3d at 587); see also *Thomas*, 335 F. App'x at 389-90 (denying a COA where the state court had chosen to credit an IQ score of 75 and disregard scores of 77 and 67); *Moore*, 517 F.3d at 784 (denying a COA even though the petitioner had obtained IQ scores of 68, 72, 72, 76, 63, and 76); *Perkins*, 254 F. App'x at 369-70 (denying a COA where the state court had chosen to credit an IQ score of 80 and disregard scores of 68 and 66); *Taylor*, 498 F.3d at 307-08 (denying a COA even though the petitioner had obtained IQ scores of 75, 63, 69, 65, and 71); *Clark*, 457 F.3d at 445 (affirming the district court's decision to defer to the state court's finding that the petitioner was not mentally retarded even though the petitioner had obtained IQ scores of 74, 65, and 68).

Hines advances the same arguments here that he advanced in state court about why the results of the IQ test he took when he was 13 are unreliable. *Compare* Objections at 9-10 *with* The Defense's Proposed Findings of Fact and Conclusions of Law ¶ 24, *located in* State Habeas Record at 2-413, *and* Successive Application for a Post-Conviction Writ of Habeas Corpus at 11-12, *located in* State Habeas Record at 1-013-1-014.  The state court made a factual determination that those arguments were without merit.  *See* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 64-80, *located in* State Habeas Record at 2-443-2-448.  Even if I were to disagree with

that determination (which I do not), on habeas review a mere disagreement "'does not suffice to supersede the trial court's [factual] determination.'" *Wood*, 130 S. Ct. at 849 (quoting *Collins*, 546 U.S. at 341-42) (ellipsis omitted).

Similarly, the testimony of Karol Asay, Hines's resource-room teacher, is not enough to overcome the voluminous findings made by the state court, *see* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 106-162, *located in* State Habeas Record at 2-453-2-464, in support of its determination that "the evidence overwhelmingly shows that, until now, no one believed [Hines] was mentally retarded or treated him as such," *id.* ¶ 105, *located in* State Habeas Record at 2-453. At most, Hines has made a showing that Asay's testimony constitutes grounds on which the state court might have made a different factual determination regarding Hines's general intellectual functioning. But such a showing does not entitle Hines to habeas relief. See *Moore*, 517 F.3d at 784 (denying a COA from the district court's denial of an *Aktins* claim where "there was conflicting expert evidence" and a set of IQ scores that "could support a finding of subaverage intellectual functioning" but also could "sustain a finding that [the petitioner] is not retarded").

Hines has taken two additional IQ tests since the state court determined that Hines is not mentally retarded. *See* Objections at 9. Both tests were administered by the state's expert, Dr. Price. Hines scored a 70 on a WAIS-IV test and a 71 on a Reynolds test, both of which were administered in April 2009. These results are

consistent with the 69 he scored on the WAIS-III test administered to him by his expert, Dr. Kessner, in April 2004. *Id.* at 9-10. During the evidentiary hearing conducted by Judge Kaplan, Dr. Price conceded that Hines's scores on those three tests were consistent with a diagnosis of mental retardation and that the only reason the scores might not be an accurate measure of Hines's IQ is that Hines might have malingered, or not put forth his full or best effort, while taking the tests. *See* Volume 2, Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States Magistrate Judge (docket entry 65) at 90-92. Dr. Price also stated that of the ten diagnostics that were administered to Hines to measure whether Hines was putting forth a full effort on the three IQ tests, eight showed that he was. *Id.* at 94-95. In addition, Dr. Kessner testified that the probability that a person who was malingering could achieve three IQ scores as consistent as the scores Hines obtained was "zero[,] . . . equivalent to winning the Lotto." *See* Volume 1, Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States Magistrate Judge (docket entry 64) at 82. Dr. Price also was unable to offer any explanation of how Hines's scores were as consistent as they were. *See* Volume 2, Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States Magistrate Judge at 88 ("I don't know how this happened. . . . I really don't know how to explain that they came out so close.").

I conclude that the evidence that Hines has obtained two additional IQ scores consistent with a diagnosis of mental retardation does not establish that it was unreasonable for the state court to determine that Hines does not suffer from significantly subaverage general intellectual functioning. The state court determined that the WAIS-III test administered by Dr. Kessner in 2004 was "not a measure of [Hines's] intellect during his developmental period, i.e., before the age of eighteen." State's Proposed Findings of Fact and Conclusions of Law ¶ 43, *located in* State Habeas Record at 2-439. In addition, the state court determined that Hines had a strong motivation to underperform on the WAIS-III and that he may not have given his best effort (the fact that he passed several tests of simple effort notwithstanding). *Id.* at ¶¶ 44-50, *located in* State Habeas Record at 2-439-2-440. Finally, the state court also determined that "[e]ven assuming [Hines] put forth his best effort on the WAIS-III, . . . the WAIS-III results do not definitively indicate a 'significantly subaverage' intellect" because a score of 69 was consistent with an IQ as high as 74. *Id.* at ¶¶ 51-52, *located in* State Habeas Record at 2-440. Each of these reasons the state court gave for discounting the results of the WAIS-III administered by Dr. Kessner in April 2004 applies with equal force to the results of the Reynolds and WAIS-IV tests administered by Dr. Price in April 2009. Therefore, I conclude that it

was not unreasonable for the state court to determine that Hines does not display significantly subaverage general intellectual functioning.[6]

### 2. *Onset Before the Age of 18*

Second, Hines argues that the testimony of Dr. Price, the state's expert, shows that Hines manifested impaired intellectual functioning before he turned 18. *See* Objections at 7-8. But the state court found that Hines's intellectual functioning was impaired because he was learning disabled and emotionally disturbed, and not because he was mentally retarded. *See* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 31, 36, 76, 126, *located in* State Habeas Record at 2-437, 2-438. 2-446, 2-457. That factual determination moots Hines's objection. Hines does not exhibit significantly subaverage general intellectual functioning within the meaning of *Briseño*, so the fact that any impairments to his intellectual functioning may have manifested themselves before he turned 18 is irrelevant to his *Atkins* claim.

---

[6] Even if I assume for the sake of argument that the results of the WAIS-IV and Reynolds tests establish that it was unreasonable for the state court to conclude that Hines does not display significantly subaverage general intellectual functioning the onset of which occurred prior to the age of 18, Hines's *Atkins* claim would still fail. As discussed below, it was not unreasonable for the state court to conclude that Hines does not suffer from significant limitations or deficits in adaptive behavior or functioning. See *infra* section II(B)(3). A petitioner who fails to meet any of the three elements of *Briseño's* definition of mental retardation cannot prevail on an *Atkins* claim. See *Clark*, 457 F.3d at 444.

### 3. *Related Limitations in Adaptive Functioning*

Third, Hines argues that the evidence presented at the hearing before Judge Kaplan refutes the state court's findings that Hines does not suffer from significant limitations or deficits in adaptive behavior or functioning. *See* Objections at 11-16. But where, as here,"[t]he evidence as to deficits in adaptive functioning cuts both ways, and the evidence in support of a finding of adaptive limitations is not without problems," a petitioner "cannot overcome the state court's findings." See *Moore*, 517 F.3d at 784. Specifically, as to the second, fourth, and sixth *Briseño* factors, the testimony of Hines's former probation officer is insufficient to overcome the twenty-eight separate findings of fact made by the state court pertaining to those three factors. *See* State's Proposed Findings of Fact and Conclusions of Law ¶¶ 163-67, 191-200, 218-230, *located in* State Habeas Record at 2-464-2-465, 2-470-2-471, 2-475-2477.

As to the ten diagnostic criteria noted in *Atkins*, see 536 U.S. at 308 n.3, Hines contends that the state has conceded that he has a significant limitation in adaptive behavior in the area of functional academics. This contention is based on a misreading of the record. Dr. Price, the state's expert, admitted that there was "some evidence" of limitations in the area of functional academics, but his ultimate conclusion was that he "did not find any significant limitations in [Hines's] adaptive behavior." *See* Volume 2, Transcript of Evidentiary Hearing Before the Honorable

Jeff Kaplan United States Magistrate Judge at 84. Hines also contends that portions of the testimony offered at the evidentiary hearing by two prison guards, John Horton and Steven White, and a prison employee, Steven Hillman, demonstrate that he has a significant limitation in the area of functional academics. Objections at 14-15. However, both prison guards also offered testimony that suggests that Hines does not have a limitation in the area of functional academics. *See* Volume 1, Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States Magistrate Judge at 231 (stating John Horton's conclusion that Hines's level of functioning was "normal"); *id.* at 239 (stating Steven White's conclusion that Hines's level of "general smarts" was "[a]bout average"). And while Hines might be correct that Steven Hillman's testimony offers only weak support for the conclusion that Hines lacks a limitation in the area of functional academics, it is certainly the case that Hillman's testimony does nothing to affirmatively establish the contrary conclusion that Hines suffers from a limitation in the area of functional academics.

Hines further contends that testimony of his brother, Glenn Hines, establishes that he has a significant limitation in the area of self-care. Objections at 15-16. However, Glenn Hines provided testimony on the same topic to the state court, *see* Successive Application for a Post-Conviction Writ of Habeas Corpus at 13-15, *located in* State Habeas Record at 1-015-1-017, and the state court made a determination that Glenn Hines's testimony was not credible, *see* State's Proposed Findings of Fact

and Conclusions of Law ¶¶ 106-109, *located in* State Habeas Record at 2-453-2-454.
Even if I were to disagree with that determination (which I do not), the fact that a federal court sitting in habeas determines that "[r]easonable minds reviewing the record might disagree" with a state court's assessment of a witness's credibility "does not suffice to supersede the trial court's credibility determination." *Collins*, 546 U.S. at 341-42. More fundamentally, Hines cannot demonstrate that the state court's credibility determination was unreasonable merely by providing additional testimony from the very witness whose credibility is in question.

### 4. *2254(d)(1)*

Finally, Hines argues that the conclusions of both the state court and Judge Kaplan were contrary to and an unreasonable application of *Atkins*. Objections at 16. This objection is misplaced: whether the petitioner is mentally retarded is a pure question of fact. See *Clark*, 457 F.3d at 444. Because the state court's factual determination that Hines is not mentally retarded was not unreasonable, it follows that the state court's denial of Hines's habeas petition was neither contrary to nor an unreasonable application of *Atkins*. Accord, *e.g.*, *Woods*, 493 F.3d at 587.

### III. CONCLUSION

For the reasons discussed above, the petitioner's objections are **OVERRULED**, and I **ADOPT** the findings and recommendation of the United States Magistrate Judge.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), I **DENY** a certificate of appealability. I adopt and incorporate by reference the magistrate judge's findings, conclusions and recommendation filed in this case in support of my finding that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[7]

---

[7] Rule 11 of the Rules Governing §§ 2254 and 2255 Cases, as amended effective on December 1, 2009, reads as follows:

> **(a) Certificate of Appealability**. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time

(continued...)

In the event that the petitioner files a notice of appeal, I note that

(X)   the petitioner will proceed *in forma pauperis* on appeal.
(...)  the petitioner will need to pay the $455.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

**SO ORDERED**.

August 18, 2010.

*[signature: A. Joe Fish]*
**A. JOE FISH**
**Senior United States District Judge**

---

(...continued)
to appeal.

**(b)  Time to Appeal**.  Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules.  A timely notice of appeal must be filed even if the district court issues a certificate of appealability.