UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BOBBY LEE HINES, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:06-CV-0320-G |
| RICK THALER, Director, Texas ) | |
| Department of Criminal Justice, ) | |
| Correctional Institutions Division, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion (docket entry 75) filed by the petitioner, Bobby Lee Hines ("Hines"), to alter the court's judgment, which denied and dismissed with prejudice his habeas corpus petition. For the reasons stated below, the motion is denied.

I. BACKGROUND

In 1992, Hines was convicted and sentenced to death in Texas. The Texas Court of Criminal Appeals (the "TCCA") affirmed his conviction and sentence on direct appeal. Findings and Recommendation of the United States Magistrate Judge

("Magistrate Findings") (docket entry 70) at 1(citing *Hines v. State*, No. 71,442 (Tex. Crim. App. May 10, 1995)). Hines filed a state petition for writ of habeas corpus, which the TCCA denied. *Id.* Hines' first petition for a federal writ of habeas corpus was denied on January 22, 2002. *Hines v. Cockrell*, No. 3:99-CV-0575-G, 2002 WL 108301, at *14 (N.D. Jan. 22, 2002) (Boyle, M.J.). The Fifth Circuit affirmed on appeal. *Hines v. Cockrell*, No. 02-10252, 2002 WL 31956173, at *1 (5th Cir. Dec. 31, 2002), *cert. denied*, *Hines v. Dretke*, 540 U.S. 827 (2003).

Hines was scheduled to be executed on December 11, 2003. However, on December 3, 2003, he filed a subsequent application for writ of habeas corpus -- claiming that he is mentally retarded and this ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002) -- and the TCCA, finding that Hines met the requirements for a subsequent writ application, stayed his execution pending resolution of his petition. After reviewing all the evidence, but without conducting a live evidentiary hearing, the state habeas court entered extensive findings of fact and conclusions of law rejecting Hines' mental retardation claim. The TCCA adopted these findings and conclusions, and denied Hines relief on appeal. *Ex parte Bobby Lee Hines*, WR-40,347-02, 2005 WL 3119030, at *1 (Tex. Crim. App. Nov. 23, 2005).

On February 2, 2006, the Fifth Circuit authorized Hines to file a successive habeas petition in this court. On February 24, 2006, the matter was referred to the magistrate judge for a hearing and recommendation. Order of Reference (docket

entry 4). On January 22, 2009, the magistrate judge conducted a full evidentiary hearing to "enable petitioner to prove his factual allegations which, if true, would entitle him to habeas relief." Memorandum Order (docket entry 34) at 3. At that hearing, both parties presented evidence, including testimony from both lay and expert witnesses. Following the hearing, the magistrate judge issued findings and a recommendation rejecting Hines' *Atkins* claim. *See generally* Magistrate Findings. Hines objected to the findings and recommendation of the magistrate judge. *See generally* Petitioner Hines' Objections to the Findings & Recommendation of the U.S. Magistrate Judge (docket entry 72). On August 18, 2010, this court overruled Hines' objections, adopted the findings and recommendation of the magistrate judge, and entered judgment to that effect. Order Accepting Findings and Recommendation of the United States Magistrate Judge, and Denying a Certificate of Appealability ("Order") (docket entry 73).

Hines now moves, under Rule 59(e) of the Federal Rules of Civil Procedure, to alter the judgment and correct what he contends are "manifest errors of law and fact," mainly the court's deference, under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), to the Texas habeas court's ruling on the merits of his *Atkins* claim, notwithstanding the lack of a live evidentiary hearing in that court. Opposed Motion to Alter or Amend the Judgment Under FED. R. CIV. PROC. 59(e) ("Motion to Alter") ¶18.

## II.  ANALYSIS

"A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotation marks omitted).  Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law.  *Brockie v. Ameripath, Inc.*, No. 3:06-CV-0185-G, 2007 WL 2120041, at *1 (N.D. Tex. July 23, 2007) (Fish, C.J.), *aff'd*, 273 Fed. Appx. 375 (5th Cir. April 11, 2008).  A motion to alter or amend may also be granted if necessary to prevent manifest injustice.  *Amir-Sharif v. Commissioners of Dallas*, No. 3:07-CV-0175-G, 2007 WL 1308314, at *1 (N.D. Tex. May 4, 2007) (Fish, C.J.) (citing *Fresh America Corporation v. Wal-Mart Stores, Inc.*, No. 3:03-CV-1299-M, 2005 WL 1253775, at *1 (N.D. Tex. May 25, 2005) (Lynn, J.)).

The decision whether to reopen a case under Rule 59(e) is within the district court's discretion.  *Stroman v. Thaler*, No. 3:05-CV-1616-D, 2009 WL 3295128, at *1 (N.D. Tex. Oct. 9, 2009) (Fitzwater, C.J.) (citations omitted).  "[W]hile a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless."  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.), *cert. denied*, 543 U.S. 976 (2004).  Reconsideration

of a judgment is an extraordinary remedy that should be used sparingly. *Stroman*, 2009 WL 3295128, at *1. "Indeed, the remedy is so extraordinary that the standard under Rule 59(e) favors denial of motions to alter or amend a judgment." *Berry v. Indianapolis Life Insurance Company*, No. 3:08-CV-0248-B, 2009 WL 1979262, at *1 (N.D. Tex. July 8, 2009) (Boyle, J.) (citations and internal quotation marks omitted). Even so, there are two important judicial imperatives that must be considered on a Rule 59(e) motion to amend: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479 (citations omitted). "The task for the district court is to strike the proper balance between these competing interests." *Id.*

Hines argues that this court's reference to the statutory language of 28 U.S.C. §§ 2254(d)(2) and (e)(1) in its order denying his *Atkins* claim constituted "deference to prosecutor-drafted, rubber-stamped findings and conclusions by the state-court," which was "not the *de novo* review required by Supreme Court law and the federal constitution." Motion to Alter ¶ 5. The court disagrees with Hines' characterization, and finds that his habeas petition would have been denied even under the standard that he proposes because he has not shown by a preponderance of evidence that he is mentally retarded, as that condition has been defined by Texas law. Accordingly, the court's judgment does not suffer from a manifest error.

A. Wiley v. Epps

After Hines filed the present motion to alter, the Fifth Circuit held, in *Wiley v. Epps*, 625 F.3d 199 (5th Cir. 2010), that a state court's denial of a petitioner's *Atkins* claim without an evidentiary hearing constitutes an unreasonable application of clearly established federal law such that no deference is due to the state court decision. *Id.* at 213. Admittedly, *Wiley* may be read to mean that this court should not have afforded AEDPA deference to the state habeas court's findings and conclusions when reviewing Hines' *Atkins* claim.* Reviewing Hines' claim *de novo* would produce the same result, however, because the totality of the record, including

---

* This point is subject to reasonable debate because the Fifth Circuit based its decision in *Wiley* on the procedure required in Mississippi after a petitioner has made a *prima facie* howing of mental retardation. See *Wiley*, 625 F.3d at 211 ("We conclude . . . that the state court's departure from its own *Chase* tandards in the face of Wiley's evidence of retardation failed to provide Wiley with the minimum constitutional protections."). This case is plainly distinguishable on its facts. Texas, unlike Mississippi, has never explicitly required a court to conduct a live evidentiary hearing on a petitioner's *Atkins* claim -- even after a petitioner makes a *prima facie* howing. See generally *Ex parte Briseño*, 135 S.W.3d 1, 7-9 (Tex. Crim. App. 2004) (defining mental retardation under Texas law, but referring to the state habeas statute's procedures for making such a determination); but see *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007) (finding that even in Texas, "where a petitioner has made a prima facie showing of retardation as Rivera did, the state court's failure to provide him with the opportunity to develop his claim deprives the state court's decision of the deference normally due."), *cert. denied*, __ U.S. __, 129 S.Ct. 176 (2008). Indeed, in this case, the TCCA specifically found no error in the state habeas court's findings of fact, notwithstanding the habeas court's failure to conduct a live evidentiary hearing. *Ex parte Hines*, 2005 WL 3119030, at *1 ("While we have said that the better practice is to conduct a live hearing in cases such as this, the evidence before the trial court was extensive and we did not specify that a live hearing was necessary when we remanded the case." (internal citation omitted)).

the transcript of the evidentiary hearing conducted by the magistrate judge, demonstrates that Hines failed to prove, by a preponderance of the evidence, that he is mentally retarded. Moreover, as the Supreme Court recently made clear, "Courts cannot grant writs of habeas corpus under § 2254 by engaging only in *de novo* review when it is unclear whether AEDPA deference applies . . . . Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a)." See *Berghuis v. Thompkins*, __ U.S. __, 130 S.Ct. 2250, 2265 (2010). Given the lack of clarity in Fifth Circuit precedent before *Wiley* -- and Supreme Court precedent more generally -- regarding whether AEDPA deference applies when a state court fails to conduct a live evidentiary hearing on a habeas petitioner's *Atkins* claim, the court would have been in error to have undertaken only *de novo* review of Hines' habeas petition. *Id.* Nonetheless, because uncertainty remains regarding the applicable standard of review, and the court has already reviewed Hines' petition with AEDPA deference to the state court's findings, *see generally* Order, the court will review Hines' *Atkins* claim *de novo*.

### B. De Novo Review

In light of *Wiley*, and in an abundance of caution, this court has conducted a *de novo* review of the record without any AEDPA deference. Under this standard, for the

reasons detailed below, Hines has not proven any of the three elements necessary to demonstrate mental retardation. Accordingly, the court did not commit manifest error by denying Hines' habeas petition, and Hines' present motion to alter is denied.

1. *Mental Retardation under Texas Law*

In *Atkins*, the Supreme Court held that the Eighth Amendment prohibits the execution of criminal defendants who are mentally retarded. 536 US. at 321. Recognizing disagreement among the states with respect to "determining which offenders are in fact retarded," the Court tasked each with the responsibility of "'developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Id.* at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399 (1986)).

Responding to the Supreme Court's mandate in *Atkins*, the TCCA adopted the definition of mental retardation set out by the American Association of Mental Retardation, n/k/a The American Association of Intellectual and Developmental Disabilities. *Briseño*, 135 S.W.3d at 7. By that definition, "mental retardation is a disability characterized by: (1) significantly subaverage general intellectual functioning," defined as an IQ of about 70 or below; "(2) accompanied by related limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18." *Id.* at 7 (internal quotation marks omitted). Under Texas law, a criminal

defendant must prove all three elements by a preponderance of the evidence to prevail on an *Atkins* claim. *Id*. at 12.

## 2. *Hines has not carried his burden*

As discussed in the court's previous order, the most reliable I.Q. scores for determining Hines' intellectual functioning are from the tests administered while he was in his teen years -- particularly the WISC-R, administered when Hines was 13 years old and resulting in a full-scale I.Q. score of 96, which is well above the range for mental retardation. Order at 10-11. Hines has produced post-petition I.Q. scores within the range of mental retardation, but these have little bearing on his intellectual ability during his developmental stage and the evidence submitted by the state's experts suggests that Hines did not put forth sufficient effort to ensure that his scores would be valid. Hines' expert, Dr. Kessner, attempted to counter this evidence by testifying that the consistency of Hines' recent scores contradicts any suggestion of malingering; she analogized the likelihood of obtaining such consistently low scores through malingering to the likelihood of winning the lottery. 1 Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States District Magistrate Judge ("1 Hearing Transcript") at 81:7-84:5. However, the Fifth Circuit has flatly rejected that argument where "the components underlying the[] scores undermine the consistency argument." See *Williams v. Quarterman*, No. 07-70006, 2008 WL 4280315, at *10 (5th Cir. Sept. 19, 2008). In this case, the consistency of

Hines' most recent I.Q. test scores, all of which are in the general range of 70, is not enough to establish by a preponderance of the evidence that Hines has subavage intellectual functioning because the component scores range from below 70 to as high as 81. 2 Transcript of Evidentiary Hearing Before the Honorable Jeff Kaplan United States District Magistrate Judge ("2 Hearing Transcript") at 69:8-70:6 (describing, among other things, Hines' "perceptual reasoning" component score on a test administered by Dr. Price in 2009). Moreover, even if it is assumed *arguendo* that Hines' made such a showing, his *Atkins* claim would still fail as a matter of law because he does not suffer from significant limitations or deficits in adaptive behavior or functioning. A petitioner who does not prove any of the three elements of mental retardation cannot prevail on an *Atkins* claim. See *Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006), *cert. denied*, 549 U.S. 1254 (2007).

Hines fails to demonstrate by a preponderance of the evidence that he suffers from adaptive deficits. The evidence that he presented on this point was contradictory and lacked credibility. Hines' mother testified that he was "slow" and his abusive father often hit his head during childhood. 1 Hearing Transcript at 14:11-21:22. Her testimony was impeached, however, by statements that she made to Hines' expert, 2 Hearing Transcript at 15:13-17:7, and Child Protective Services when discussing her abusive husband: in particular she stated that her husband physically abused her but not the children -- including Hines, 1 Hearing Transcript at

22:21-25:21. Hines' brother, Glenn, also attested to Hines' slow development as a child. 1 Hearing Transcript at 26:23-44:15. Glenn's testimony, however, was undermined by his admission that after he turned 12 years old, he had only "off and on" personal interactions with Hines, who is approximately four years younger than he. *See id.* at 28:1-14, 48:22-52:6. Similarly, the testimony given by Hines' expert was inconsistent and unpersuasive, and it was refuted by testimony from the state's experts. Most notably, Dr. Kessner admitted that she was not aware of any pre-18 diagnosis of Hines' alleged mental retardation, *id.* at 114:1-3; her report did not include any information about Hines' adaptive functioning, *id.* at 116:24-118:6; and she overlooked or did not have an opportunity to review a number of samples of Hines' writing, *id.* at 122:12-124:10. Hines' evidence does not show that he suffers from adaptive deficits.

After reviewing Hines' claim *de novo*, including all of the evidence presented at the evidentiary hearing conducted by the magistrate judge, the court is of the opinion that Hines has not proven by a preponderance of the evidence that he is mentally retarded, as that term has been defined by *Atkins* and its Texas progeny. Therefore, even if this court improperly gave AEDPA deference to the state court judgment, the error was harmless because reviewing Hines' *Atkins* claim *de novo* leads to the same result. Consequently, Hines has no basis for Rule 59(e) relief.

## III. CONCLUSION

For the above-stated reasons, the petitioner's Rule 59(e) motion is **DENIED**.

**SO ORDERED**.

April 4, 2011.

_____
**A. JOE FISH**
**Senior United States District Judge**